UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>ROADRUNNER TRANSPORTATION SERVICES, INC.,<br><br>    Defendant. | Case No. 23-cv-00119-JST<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND**<br><br>Re: ECF No. 10 |

Before the Court is Plaintiffs Fernando Gomez and Ron Moore's motion to remand this action to the San Francisco County Superior Court. ECF No. 10. The Court will grant the motion.

## I.   BACKGROUND

Gomez filed this putative class action in state court on December 3, 2018, alleging that Defendant Roadrunner Transportation Services, Inc. ("Roadrunner") misclassified Gomez and other Roadrunner truck drivers as independent contractors. ECF No. 1-1 at 5–25. The complaint included the following causes of action: (1) unpaid overtime, Cal. Lab. Code §§ 510, 1194; (2) failure to provide meal periods, *id.* §§ 226.7, 512; (3) failure to provide rest periods, *id.* § 226.7; (4) inaccurate wage statements, *id.* §§ 226, 226.3, 1174; (5) waiting time penalties, *id.* §§ 201-203; and (6) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* ECF No. 1-1 at 16–23. It also sought attorney's fees and costs. *Id.* at 17, 19–20, 22–23.

Roadrunner removed the action on May 20, 2019, invoking subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). ECF No. 1-1 at 44–52. On June 19, 2019, Gomez filed a motion to remand. *Gomez v. Roadrunner Transp. Servs., Inc.*, No. 19-cv-02748-JST, 2019 WL 13397802, at *1 (N.D. Cal. Sept. 24, 2019). On September

1    24, 2019, the Court granted Gomez's motion, remanding the case to San Francisco County
2    Superior Court, and holding that Roadrunner failed to establish that the amount in controversy
3    exceeded $5 million. *Id.* at *5.
4       The action then proceeded in San Francisco Superior Court for three years. *See* ECF Nos.
5    1-1–1-2. On May 12, 2021, the Superior Court granted Roadrunner's motion for summary
6    adjudication on Gomez's causes of action for failure to provide meal periods, failure to provide
7    rest periods, and failure to provide accurate wage statements, but denied Roadrunner's motion as
8    to Gomez's remaining claims. ECF No. 1-1 at 85–108.
9       Subsequently, Plaintiffs' counsel moved for leave to file a first amended complaint
10   ("FAC") to replace Gomez with Moore and to name Moore as a class representative because
11   Gomez had passed away. *Id.* at 124. The Superior Court granted the request to add Moore as a
12   plaintiff and class representative, but it denied the request to dismiss Gomez because Plaintiffs'
13   counsel failed to submit "a declaration that 'clearly state[s] whether consideration, direct or
14   indirect, is being given for the dismissal[.]'" *Id.* at 125 (alterations in original) (quoting Cal. Rule
15   of Court 3.770(a)). Plaintiffs filed the FAC, which included Moore as a named plaintiff, on
16   December 16, 2022. *Id.* at 128–41. Roadrunner answered on January 18, 2022. ECF No. 1-2 at
17   2–9.
18      On January 19, 2022, the Superior Court granted the parties' stipulation, which allowed
19   Plaintiffs to file a second amended complaint ("SAC") that added a claim for willful
20   misclassification, Cal. Labor Code § 226.8, and "detail[ed] additional facts supporting Plaintiff's
21   [sic] causes of action[.]" *Id.* at 15–17. Plaintiffs filed the SAC on February 9, 2022, *id.* at 35–49,
22   and Roadrunner answered on February 15, 2022, *id.* at 51–56.
23      Plaintiffs then moved for leave to file a third amended complaint ("TAC") to add the
24   claims for failure to provide meal periods and rest periods, as to which the Superior Court had
25   previously granted judgment in favor of Roadrunner, in light of *Garcia v. Superior Court*, 80 Cal.
26   App. 5th 63 (2022). *Id.* at 72. The Superior Court granted this request, *id.* at 69–75, and Plaintiffs
27   filed the TAC on August 19, 2022, *id.* at 77–95. Roadrunner answered on October 24, 2022. *Id.*
28   at 138–43.

On January 10, 2023, Roadrunner removed the action to this Court again. ECF No. 1. Plaintiffs now move to remand the action. ECF No. 10. Roadrunner opposes the motion. ECF No. 13.[1]

## II.  LEGAL STANDARD

"[A]ny civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to [a] [federal] district court." 28 U.S.C. § 1441(a). CAFA "gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014). In a CAFA case, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id*. at 89. If, however, "a defendant's assertion of the amount in controversy is challenged," then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (quoting *Dart Cherokee*, 574 U.S. at 88). The parties may rely on "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id*. at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

No presumption against removal jurisdiction applies in CAFA cases. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) ("Congress and the Supreme Court have instructed us to interpret CAFA's provisions under section 1332 broadly in favor of removal, and we extend that liberal construction to section 1446."); *see also Dart Cherokee*, 574 U.S. at 89 ("[N]o antiremoval presumption attends cases invoking CAFA."). Nonetheless, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal

---

[1] Plaintiffs did not file a reply. They filed objections to Roadrunner's opposition evidence on March 15, 2023, 13 days after a reply would have been due. ECF No. 14. The Court issued an order to show cause as to why the Court should consider Plaintiffs' evidentiary objections in light of their having been filed late and in contravention of Civil Local Rule 7-3. ECF No. 29. In response, Plaintiffs withdrew their evidentiary objections. ECF No. 30 at 2.

jurisdiction." *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) (per curiam) (noting that Congress passed CAFA in the context of a "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"); *see also Love v. Villacana*, 73 F.4th 751, 755 (9th Cir. 2023) ("Upon removal, a defendant assumes voluntarily the burden of establishing federal jurisdiction." (quotation and citation omitted)).

### III.  DISCUSSION

Plaintiffs argue that this case should be remanded because (1) Roadrunner's notice of removal is untimely; (2) Roadrunner has waived its right to remove; and (3) Roadrunner fails to prove that the amount in controversy exceeds $5 million.  ECF No. 10 at 4–12.  Because the question of whether Roadrunner's removal was timely is dispositive, the Court decides the motion on that basis.

Plaintiffs argue that Roadrunner's removal was untimely for three reasons:  Roadrunner "relies on information known to [it] for nearly a year"; it "cites to a line of cases that are inapplicable under the current facts"; and the caselaw establishes that even if "the underlying complaint is 'indeterminate,' where the defendant is aware of the facts that give rise to the ability to remove, it must do so within the 30-day window pursuant to 28 U.S.C. § 1446(b)[]." *Id.* at 4.  Roadrunner argues that its removal was timely because it "had to multiply a number that it arrived at based on its own investigation (819 putative class members) by the penalties that Plaintiff[s] claimed to be entitled to in" the TAC to determine the amount in controversy, making the SAC and TAC "indeterminate."  ECF No. 13 at 14.

"A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply)[.]"  28 U.S.C. § 1453(b).  Section 1446 requires a defendant to file a notice of removal of a civil action within 30 days after the receipt by the defendant of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.  28 U.S.C. § 1446(b)(1).  However, "if the case stated by the initial pleading is not removable," a defendant may file "a notice of removal . . . within 30 days after receipt by the defendant, . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one

4

which is or has become removable." *Id.* § 1446(b)(3). Additionally, a defendant may remove a case "outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013).

"[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005); *see also Roth*, 720 F.3d at 1121 ("[A] 'defendant's subjective knowledge cannot convert a non-removable action into a removable one' such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant."). "In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014). The Ninth Circuit has acknowledged that in CAFA cases, there is a "theoretical possibility" that defendants could engage in "abusive gamesmanship" by waiting to file a notice of removal "until the state court has shown itself ill-disposed to defendant, or until the eve of trial in state court[.]" *Roth*, 720 F.3d at 1126. Its "best answer" to that possibility "is that plaintiffs are in a position to protect themselves," i.e., "[i]f plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained." *Id.*; *see also Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013) ("By leaving the window for removal open, it forces plaintiffs to assume the costs associated with their own indeterminate pleadings.").

The Ninth Circuit also has stated, however, that "[a] case becomes 'removable' for purposes of section 1446 when the CAFA ground for removal is disclosed." *Jordan*, 781 F.3d at 1184. And while "defendants need not make extrapolations or engage in guesswork" when determining whether the pleadings reveal that the case is removable, Section 1446 "requires . . . defendant[s] to apply a reasonable amount of intelligence in ascertaining removability." *Kuxhausen*, 707 F.3d at 1140 (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d

5

Cir. 2001)); *see also Roth*, 720 F.3d at 1125 ("A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so."). Accordingly, "[c]ourts should and do scrutinize the timeliness of removal if defendant's actions suggest gamesmanship or undue delay." *Andrade v. Beacon Sales Acquisition, Inc.*, No. CV 19-06963-CJC (RAOx), 2019 WL 4855997, at *2 (C.D. Cal. Oct. 1, 2019); *see also Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1130 (C.D. Cal. 2016) (citing *Roth*, 720 F.3d at 1126). (holding that removal was untimely and noting that the court was "a little wary of the instant removal because there appears to be 'the theoretical possibility' that the instant removal was motivated by the 'gamesmanship' about which the Ninth Circuit was concerned in *Roth*").

Here, in its notice of removal, Roadrunner explains that the amount in controversy exceeds $5 million because it "has determined that 819 individuals fit Plaintiff[s]' class definition," and that 819 multiplied by $10,000, the minimum penalty alleged in Plaintiff's willful misclassification cause of action, equals $8,190,000. *Id.*; *see also* ECF No. 1-2 at 44–45. Roadrunner contends that this information is new, *id.* at 3, but when Roadrunner first removed the case in July 2019, it knew that as of January 8, 2019, the putative class had approximately 666 members.[2] ECF No. 13-1, *Gomez v. Roadrunner*, 19-cv-02748-JST (N.D. Cal. July 3, 2019). And not later than January 4, 2022, when it signed a stipulation to permit the filing of the SAC, Roadrunner knew that the SAC (1) utilized the same class definition as the one Roadrunner used to calculate the existence of 666 putative class members in 2019, and (2) included the same civil penalties for willful misclassification that it multiplied by its updated number of class members. ECF No. 1-2 at 29–30. Accordingly, when Roadrunner received the SAC, it could have performed the same computation that it did in its notice of removal, which also would have resulted in an amount in controversy that exceeded $5 million. Therefore, Roadrunner's removal

---

[2] Roadrunner's number of putative class numbers from 2019 differs from its 2023 number because Plaintiffs' class definition the 2023 calculation includes independent contractors that contracted with Roadrunner between January 9, 2019 and December 15, 2022. ECF No. 1 at 6. For the purposes of its timeliness analysis, the Court need not determine whether including these additional putative class members is appropriate.

more than a year later was untimely because it failed to "apply a reasonable amount of intelligence in ascertaining removability," *Kuxhausen*, 707 F.3d at 1140 (quoting *Whitaker*, 261 F.3d at 206), when it ignored the civil penalties in the SAC "from which removability could easily have been ascertained, perhaps hoping that it could rely on 'other papers' to remove the matter at a later, more advantageous time," *Garcia*, 207 F. Supp. 3d at 1132.

*Garcia* is instructive. There, "more than one year before removing the . . . action, [the defendant] had determined, based on its own investigation, that there were 2,648 class members," and "[t]he only facts [it] use[d] to support its calculations [in the notice of removal were] the number of putative class members during the statutes of limitations periods and the number of pay periods.'" *Id.* at 1129. The court reasoned that "given the variables defendant relies on to arrive at the calculations upon which it bases its removal," *id.* at 1130, "the simple computation could have been performed" at the time the defendant ascertained the number of putative class members, more than a year before the defendant removed the case, *id.* at 1129. Furthermore, more than 30 days before removal the "class action administrator provided the class contact information for approximately 2,412 individuals." *Id.* at 1131. Thus, the defendant in *Garcia* "could and should have applied 'a reasonable amount of intelligence' and ascertained removability at least as early as" 30 days from receiving the class action administrator's information. *Id.* at 1131 (quoting *Kuxhausen*, 707 F.3d at 1140). Similarly, here, Roadrunner represented to this Court in 2019 that it had completed its investigation, finding that there were 666 putative class members. Thus, because it is clear that Roadrunner could have performed the same "simple computation" that now performs in its notice of removal when it received the SAC in January 2022, the Court can conclude that Roadrunner failed to remove the case within 30 days of ascertaining that the case was removable on CAFA grounds.

Accordingly, Roadrunner's removal was untimely, and the Court grants Plaintiffs' motion to remand.[3]

---

[3] In light of this conclusion, the Court need not address the parties' arguments regarding whether Roadrunner waived its right to remove the case or whether Roadrunner has established that the amount in controversy exceeds $5 million.

7

**CONCLUSION**

The Court grants Plaintiffs' motion. This action is hereby remanded to the San Francisco County Superior Court. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 23, 2023



JON S. TIGAR
United States District Judge